# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **JENNY GARCIA G.,**[1] ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **CAROLYN W. COLVIN,**[2] ) <br> **Acting Commissioner of Social Security,** ) <br> ) <br> **Defendant.** ) <br> _____ ) | CIVIL ACTION <br><br> No. 24-2096-JWL |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) failure to discuss the effects of Plaintiff's intravenous immunoglobulin (IVIG) infusions on her ability to work on a regular and continuing basis, the court ORDERS that judgment shall be entered pursuant

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On November 30, 2024, Ms. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Martin O'Malley as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING the case for further proceedings consistent with this decision.

I.   **Background**

Plaintiff protectively filed applications for SSDI and SSI benefits on July 27, 2021. (R. 27, 303-07, 309-14). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (Doc. 1). Plaintiff claims the ALJ erred in refusing to leave the record open to receive evidence of medical treatment scheduled to be had within a week after the hearing; in failing to address an additional limitation opined by her neurologist in a Certification of Disability for Disabled Parking Placard/Plate/Decal;" in failing to include manipulative limitations or explain why he did not do so; and in failing to address limitations resulting from Plaintiff's need to undergo IVIG infusions for ten hours over two days every three or four weeks.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to

the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in Bowling)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a

3

determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Because the court remands for failure to address the effects of Plaintiff's IVIG infusions it will not provide an advisory opinion on the remaining issues raised in Plaintiff's Social Security Brief. If desired, Plaintiff may raise those issues to the Commissioner on remand.

**II.   Discussion**

Plaintiff argues, that contrary to the dictates of Social Security Ruling (SSR) 96-8p, the ALJ failed to consider "the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." (Pl. Br. 17) (quoting without pinpoint citation SSR 96-8p, 1996 WL 374184, *5 (SSA July 2, 1996)). She points out that at first, she received IVIG infusions every four weeks but eventually began receiving them every three weeks. Id. at 18 (citing R. 714, 743, 756). She noted the infusions take place for a total of ten hours over a two-day period. Id. (citing R. 743, 756). She argues the ALJ did not consider this time she would miss work and that such off-work periods occurring consistently over time would preclude work. Id.

The Commissioner responds, "This consideration is irrelevant to the RFC analysis, which considers functional limitations caused by a claimant's impairments, not absences caused by the treatment of a claimant's impairments." (Comm'r Br. 16) (citing 20 C.F.R. § 404.1545(a); and Cherkaoui v. Comm'r of Soc. Sec., 678 F. App'x 902, 904 (11th Cir. 2017) ("The number of medical appointments [the claimant] attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities.")). She continues, "there is no indication that Plaintiff could not complete a

5

40-hour workweek while also receiving these infusions by scheduling them outside of her working hours." Id. at 17 (citing Razo v. Colvin, 663 F. App'x 710, 717 (10th Cir. 2016) ("To be able to perform work on a 'regular and continuing basis,' . . . one need not keep a particular work schedule.") (citing 20 C.F.R. § 405.1545(b) & (c))).

### A.  The ALJ's Discussion of Plaintiff's IVIG Infusions

> The November 10, 2021, exam noted the claimant's last exacerbation of myasthenia gravis was in the fall of 2020. The claimant was started on IVG [sic] in January 2021 and there had been very significant and sustained improvement and she had been off prednisone since at least March 2021. The claimant was functionally able to do everything she wants to and has no problems caring for her toddler (Ex. 2F/3).
>
> The April 8, 2022, exam noted the claimant reported she was doing better since her last visit, feels stronger with IVIG in every sense, and feels able to keep up with her daughter and can do everything with her (Ex. 3F/4). The physical exam was unremarkable (Ex. 3F/4-5). The October 28, 2022, exam physical exam [sic] was unremarkable except for being unable to walk on her toes (Ex. 4F/5-6).
>
> \*\*\*
>
> Regarding the claimant's myasthenia gravis, the undersigned noted the claimant had minimal myasthenia gravis symptoms. The November 10, 2021, exam noted there had been very significant and sustained improvement int the claimant's myasthenia gravis symptoms. The claimant was functionally able to do everything she wants to and has no problems caring for her [daughter?] since her last visit, feels stronger with IVIG in every sense, and feels able to keep up with her daughter and can do everything with her (Ex. 3F/4). The claimant had multiple normal physical examinations except for being unable to walk on her toes. There were no exacerbations of myasthenia gravis symptoms severe enough to require a hospitalization or emergency room admission after the fall of 2020. The evidence of record reveals the claimant had minimal symptoms after starting IVG [sic] medication. If the claimant's symptoms were as severe as alleged, one would expect there to be more consistent treatment and persistent objective medical signs and findings of myasthenia gravis symptoms. The evidence of record is not consistent [with] the claimant's allegations regarding the severity of her myasthenia gravis symptoms.

(R. 22-23).

### B. Analysis

The evidence confirms Plaintiff's allegation she has IVIG infusions given for ten hours total over two days and repeated every three weeks and the Commissioner does not argue otherwise. The Commissioner's argument the time spent in treatment is irrelevant is without merit. The Commissioner issued SSR 96-8p "To state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI of the Social Security Act." 1996 WL 374184, *1. The Ruling provides "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

> The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. Age and body habitus are not factors in assessing RFC. It is incorrect to find that an individual has limitations beyond those caused by his or her medically determinable impairment(s) and any related symptoms, due to such factors as age and natural body build, and the activities the individual was accustomed to doing in his or her previous work.

Id. The SSR explains an "RFC assessment must be based on all of the relevant evidence in the case record," and lists eleven specific types of evidence which must be considered including "Effects of symptoms" and "The effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment,

7

duration, disruption to routine, side effects of medication)." Id. at *5 (first emphasis in original, second emphasis added). Thus, "the mechanics of treatment" are restrictions that result from the individual's medically determinable impairments much like symptoms—and must be used in assessing RFC. They are not the same as age, body habitus, or activities to which the individual was previously accustomed—which may not be used in assessing RFC.

      Here, the ALJ recognized Plaintiff's IVIG infusions and relied upon them to find that her symptoms were not as disabling as alleged, but he did not discuss how the frequency and duration of treatment would affect Plaintiff's ability to work on a regular and continuing basis. Perhaps the best example of mechanics of treatment being disabling is Listing 6.03, Chronic kidney disease, in which dialysis which has lasted or is expected to last at least twelve months is sufficient to meet the Listing. 20 C.F.R., Pt. 404, Subpt. P., App. 1 §§ 6.00C1, 6.03; (SSA Oct. 6, 2023).

      The Commissioner's argument that Plaintiff could schedule work around treatment or treatment around work ignores several considerations. The ALJ did not discuss either possibility. The VE was not asked and did not testify as to the possibility for alternative work schedules in sedentary, unskilled (SVP 2) occupations to work around such treatment requirements, and the record does not contain evidence that IVIG infusions are available seven days a week or during non-working times. It is the court's experience that only urgent or emergency healthcare is available on the weekends, or in the evening or night hours. The court is not saying this situation cannot be resolved with alternative work or treatment schedules. What it is saying is the ALJ did not discuss or

8

make findings regarding these obvious problems with an impairment such as myasthenia gravis which in this case requires ten hours of IVIG infusions total over a two-day period.

The Commissioner's appeal to 20 C.F.R. § 404.1545; Cherkaoui, 678 F. App'x at 904; and Razo, 663 F. App'x at 717 do not require a different result. As explained above, the requirement for IVIG infusions in this case is a restriction caused by Plaintiff's myasthenia gravis within the meaning of § 404.1545. In Cherkaoui, the court was unpersuaded by the plaintiff's "argument that the excessive number of medical appointments she attended rendered her disabled," and found "[t]he number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities." 678 F. App'x at 904. In Razo, the plaintiff argued "the ALJ failed to consider his need to take time off work for medical appointments," but the court found that even if the large number of appointments "were necessary following surgery, it does not mean Mr. Razo would be required to attend follow-up appointments indefinitely, nor does it mean he could not perform work on a regular and continuing basis." 633 F. App'x at 717. Here, the issue is not appointments but <u>required</u> treatment. This distinction easily distinguishes both unpublished and non-controlling opinions, one of which is not even from this circuit.

Although Plaintiff did not raise this issue at the ALJ hearing, the ALJ was clearly aware of Plaintiff's required IVIG infusions and should have discussed and explained their impact on her ability to work on a regular and continuing basis. Remand is required to perform the required analysis. Remand for award of benefits, as requested by Plaintiff,

is inappropriate because the required analysis must be done in the first instance by the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REVERSING the Commissioner's final decision and REMANDING the case for further proceedings consistent with this decision.

Dated January 16, 2025, at Kansas City, Kansas.

s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**